[Civ. No. 2288. Second Appellate District, Division One.—June 27, 1919.]

BERNICE WRIGHT, Executrix, etc., Appellant, v. WILLIAM H. ALLEN, Jr., et al., Respondents.

[1] STATUTE OF LIMITATIONS—ACTION ON BOOK ACCOUNT—DATE OF ENTRY—FINDING—EVIDENCE.—In this action by an executrix on an open book account for legal services rendered, the court was justified in finding that the item was entered in the books of the deceased on a given date, which was more than four years and six months before commencement of suit.

[2] ID.—AMENDMENT OF COMPLAINT—SUFFICIENCY OF ANSWER.—In such action, an answer alleging that the amended complaint was filed more than four years and six months after the entry, if any, upon the book of accounts of the deceased, and more than four years and six months after the last service rendered, "and that therefore plaintiff's first cause of action is also barred under the provisions of subdivision 2 of section 337, and section 353, of the Code of Civil Procedure, in that the said action, purport-

ing to be upon an open book account, was not commenced within a period of four years and six months from the time that the said open book account, if any, was created, and from the time that the said last services of . . . deceased, were rendered to the defendant in said action," sufficiently presented the plea of the statute of limitations.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge. Affirmed.

The facts are stated in the opinion of the court.

V. L. Ward and Howard W. Wright for Appellant.

Charles H. Brock for Respondents.

THE COURT.—Appeal by plaintiff from an adverse judgment.

W. S. Wright, Esq., now deceased, was an attorney at law practicing his profession in this state. He was employed by these defendants and some sixteen other persons and corporations to represent them in protecting large interests which involved the matter of bonds and lien claims affecting the Wentworth Hotel at Pasadena. The engagement of Wright was made by a writing to which were attached various signatures of his employers, including those of the defendants here. That the employment was so made and that valuable services were rendered to the defendants, no question is made or suggested in this suit. Neither are the following facts in any wise disputed: After completion of the legal services, Wright mailed a detailed statement to all of the persons employing him, apportioning the total sum agreed to be paid, which was ten thousand dollars, among his debtors. Practically all of these debtors, except these defendants, responded, and Wright received $8,482.37 on the account. The statement of account was sent out on the eighth day of June, 1911. Wright was unable, notwithstanding his importunities in that regard, to obtain any money from these defendants upon their admitted indebtedness, and under date of February 13, 1912, more than six months after this statement had been sent out, he wrote to one of these respondents as follows:

"February 13, 1912.

"Mr. Wm. H. Allen,

"Title Insurance & Trust Company,

"Los Angeles, California.

"My dear Mr. Allen:

"Isn't it a shame, after I did all that work in the Wentworth matter, defending bonds, and in the matter of the liens, that neither of my three good friends,—Wm. H. Allen, Sydney Torrance, and Gen. Wentworth,—pays his share of the bill? You know when I employ the Title Insurance & Trust Company, as I have for twenty years, and it sends its bill, it is always paid. It really shocks me to think that though I have sent you a bill several times, you have not even answered it. I cannot afford to do the work without pay. I do not quite know what to think about it. Of course, in the case of Gen. Wentworth, I can understand, because—just because.

"Yours truly,

"W. S. WRIGHT."

He received a response to this letter which in substance was that the writer had some understanding with Mr. Torrance, the codefendant here, that he was to take care of the debt. At the trial Mr. Allen admitted that his contract with Wright contained no hint that another person was to pay his debt, but stated that through an individual arrangement between himself and Torrance, Torrance had guaranteed to take care of it. Mr. Torrance on his side testified that, in some conversation with Wright when payment of the account was requested, he had stated that his understanding was that Mr. Allen had charge of the matter of arranging for payment. And so, to speak colloquially in the expressive slang of the street, "the buck was passed." This testimony, of course, furnished no defense to the claim, and it is not pretended anywhere by counsel in his argument that respondents had any defense which involved the merits of the claim, either on the ground that they had not received full value in the time and labor of Mr. Wright, or that the amount charged was improper or in any wise different from what they had agreed to pay. The sole and only defense urged against this suit of the executrix to collect the money due is that the statute of limitations had run against the claim. This defense was pleaded under all

of the statutes that might be deemed applicable, and was allowed by the trial court and is urged here insistently in defense of the judgment, and this defense, by reason of the evidence and the law, we are compelled to sustain. The cause of action pleaded was as upon an open book account, under which the limitation of four years (Mr. Wright having died in May, 1915) would apply from the date of the last item charged. (Code Civ. Proc., secs. 337, 344.) The ledger kept in Mr. Wright's office was produced before the court, and the young woman who was familiar with the keeping of the accounts was asked to testify as to the date when the total ten thousand dollar charge had been entered therein, that charge appearing to be the item last in date. Just above this charge, under the year date of 1909, had appeared several items, including one (the last) of February 17th. A new year date then appeared, that of 1911, and immediately under this date were the words and figures, "March 27, To services in the matter of defending bonds and the liens, 10,000." It was noted that a line had been drawn through the word and figures "March 27" and the witness' attention was called to that fact and she was asked to explain the reason for the apparent cancellation. She replied: "I could only—I couldn't say accurately—it must have been after February of that year. I see I have written 'March' and for some reason crossed that out; so presumably it was shortly after that previous date." The previous date, as we have noted, was the date of February 17th, but it was in the year 1909. The court had no other evidence than the testimony of this witness and an inspection of the original ledger to guide it in making findings, and the finding was that the entry was made "not later than the 27th day of March, 1911." Respondents insist that this action having been commenced on September 28, 1915, applying the limiting period of the statute of four years and six months, the cause of action would, as the court found, have been completely barred before commencement of suit. Counsel for appellant admits that that conclusion follows if the fact is correctly determined as to the date of the entry of the item, but insists that the evidence was not sufficient to warrant the court in finding that the item was entered not later than March 27th. **[1]** We think that the court, having before it the original book,

with whatever aid the testimony of the young woman witness afforded, was justified in making the finding as it did. There was no other evidence tending in any way to show that the entry was made at a later date.

[2] The further contention is advanced by appellant that the plea of the statute of limitations as against the book account was insufficiently stated in that defendants in their answer referred to the amended complaint only, and did not properly present an issue which would cover the date upon which the original complaint was filed. We have read carefully the allegation of the answer and think that it must be held to have presented an issue upon the cause of action first set forth in plaintiff's amended complaint. The allegation is quoted in full: "Defendant further states that the first cause of action set forth in plaintiff's complaint constitutes a new and different cause of action from that contained and set forth in plaintiff's first amended complaint; that the said second amended complaint herein was filed more than four years and six months after the entry, if any, upon the book of accounts of W. S. Wright, deceased, and more than four years and six months after the last service rendered by the said W. S. Wright, deceased, in and about the litigation mentioned in plaintiff's second amended complaint, and that therefore plaintiff's first cause of action is also barred under the provisions of subdivision 2 of section 337, and section 353, of the Code of Civil Procedure, in that the said action, purporting to be upon an open book account, was not commenced within a period of four years and six months from the time that the said open book account, if any, was created, or from the time that the said last services of W. S. Wright, deceased, were rendered to the defendant in said action." Having determined these questions adversely to appellant's contention, it is unnecessary to enter into any further discussion of the argument presented. It may be remarked, however, in emphasis of what has been stated earlier in this opinion, that in further answering the argument of appellant, defendants have insisted that as the account had never been disputed, its correctness was admitted, and that a shorter statute of limitation (which was pleaded), to wit, that upon a stated account, should be applied in the event that the first plea to the open account

was not held good. For obvious reasons it is unnecessary to consider the argument or authorities presented under this head.

The judgment appealed from is affirmed.